IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

ANGELA ADDISON, et al.,

        Plaintiffs,

v.

DST SYSTEMS, INC.,

        Defendant.

## PETITION FOR AN ORDER
## COMPELLING ARBITRATION PURSUANT TO 9 U.S.C. § 4

Plaintiffs, by and through their attorneys of record, individually and on behalf of the DST Systems, Inc., 401(k) Profit Sharing Plan (hereinafter "the DST Retirement Plan" or "Plan') to the extent necessary to protect and recover his or her individual Plan damages, submit the following for their Petition to Compel Arbitration pursuant to Section 4 of the United States Arbitration Act (9 U.S.C.A. § 4):

1. DST Systems, Inc. ("DST") continues to engage in an unscrupulous, and now discredited, attempt to whipsaw this Court, *and hundreds of its own employees*, contending first that Plan participants *must* bring their ERISA claims *on their own behalf* and then, having secured this Court's agreement, taking the contrary view that ERISA claims *may not* be resolved in arbitration.

2. On October 4, 2021, this Court rejected DST's attempted reversal and held that in accordance with *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) and *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475 (8th Cir. 1988), claims under ERISA § 502(a) may be brought in arbitration on an individual basis. *Hursh v. DST Sys., Inc.*, No. 4:21-MC-021-9026, 2021 WL 4526849, at *4 (W.D. Mo. Oct. 4, 2021).

3. Even still, in a show of utter bad faith and shameless contempt for the Court, DST is refusing to proceed in arbitration in accordance with the terms of the Arbitration Agreement. For instance, although the Arbitration Agreement requires that DST "pay the Arbitrator fees and the costs charged by AAA in any arbitration," DST is refusing to pay the fees and costs charged by the AAA in each of the arbitration actions filed by the above-listed Plaintiffs. As a result, the AAA has "administratively closed" the Plaintiffs' arbitration actions because DST is refusing submit the necessary filing fees and arbitrator expenses in the Plaintiffs' individual matters.

4. In effect, DST has unilaterally blocked the Plaintiffs' arbitration cases from proceeding in clear contravention of the parties' Arbitration Agreement and the substantive law that applies to the claims.

5. Additionally, DST is blocking, as a practical matter, the settlement of claims which the Plaintiffs intend to make with Ruane, Cunniff & Goldfarb, Inc. By refusing to participate in the Plaintiffs' arbitrations, DST is refusing to provide certain reports that contain the information necessary to calculate each Plaintiff's individual damage amounts, which information is necessary for the making of any partial settlement of the claims.

**PARTIES**

6. Plaintiffs are 155 individuals who are attempting to arbitrate individual claims against DST. Details for each Plaintiff are listed in Appendix A.

7. Plaintiffs are each a "participant," as defined by 29 U.S.C. § 1002(7), in the DST Retirement Plan and either a current or former employee of DST (or a beneficiary of such current or former employee) who worked for DST at one of its offices located within this District.

8. DST, though technically incorporated in Delaware, has its principal place of business in Kansas City, Missouri. DST is the sponsor, administrator, and a designated fiduciary

of the Plan under 29 U.S.C. §§ 1002 and 1102. *Hursh v. DST Sys., Inc.*, No. 4:21-MC-021-9026, 2021 WL 4526849, at *1 (W.D. Mo. Oct. 4, 2021).

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying dispute arises from DST's alleged breaches of ERISA's fiduciary duties, including without limitation, its failures to diversify and to exercise prudence with regard for an investment in the common stock of Valeant Pharmaceuticals International, Inc., which claims arise under federal law.

10. This Court has personal jurisdiction over DST because DST has its headquarters and principal place of business in Missouri.

11. Venue is proper in this district pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1391(b) because DST has its headquarters and principal place of business in Missouri and conducts business in Jackson County, Missouri, and many of the acts and omissions complained of occurred in Jackson County, Missouri.

## BACKGROUND

### The Arbitration Program and Agreement

12. In 2008, DST Systems, Inc. ("DST"), implemented an expansive "Arbitration Program and Agreement" (the "Arbitration Program and Agreement" or "Arbitration Agreement") requiring that disputes to be resolved by individual arbitrations conducted by the American Arbitration Association ("AAA"). Attached hereto as **Exhibit A** is a true and correct copy of the Arbitration Program and Agreement, effective August 2008. In 2016, DST modified and reimplemented its Arbitration Program and Agreement requiring that disputes to be resolved by

3

individual arbitrations conducted by the AAA. Attached hereto as **Exhibit B** is a true and correct copy of the Arbitration Program and Agreement, effective July 1, 2016.

13. The Arbitration Agreement states: "All claims must be asserted, heard, and resolved on a single Associate individual basis, unless otherwise agreed to by all parties." (Ex. B at 3. *See also* Ex. A at A-3.) The Arbitration Agreement goes on to say: "An Associate may not assert claims on behalf of multiple Associates or as a class action or collective action on behalf of other Associates, either in court or under this *Arbitration Program and Agreement*, and an Associate may not have a claim asserted on his or her behalf by another person as a class representative or otherwise." (Ex. A at A-3-A-4. *See also* Ex. A at 3.)

14. The Arbitration Agreement also states that "the substantive law applied to claims shall be the state or federal substantive law that would be applied by a federal district court judge sitting in the county of the place of the Associate's employment or prospective employment." (Ex. A at A-2.) The Plaintiffs were each employed by DST in Kansas City, Missouri. Therefore, the law to be applied is the law as it is interpreted by this District, the Eighth Circuit Court of Appeals, and the Supreme Court.

15. Finally, in all capital letters, the Arbitration Agreement states: **"THIS *ARBITRATION PROGRAM AND AGREEMENT* CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE COMPANY AND ASSOCIATES AS A CONTRACT…"** (Ex. A at A-5. *See also* Ex. B at 5.)

16. On February 26, 2016, the Arbitration Agreement was duly adopted by and incorporated into the DST Systems, Inc. 401(k) Profit Sharing Plan (the "Plan"), effective as of January 1, 2016. Attached hereto as **Exhibit C** is a true and correct copy of the 2016-1 Amendment to the DST Systems, Inc. 401(K) Profit Sharing Plan (the "2016-1 Amendment").

17. Section 9.11 of the Plan states as follows:

> **9.11. MANDATORY ARBITRATION AND CLASS ACTION WAIVER**
>
> Unless prohibited by ERISA, any and all claims arising out of or related to the Plan, other than claims for benefits due under the terms of the Plan, are subject to mandatory arbitration and class action waiver as provided under (i) the DST Arbitration Program Agreement, effective July 1, 2016, as amended, (ii) any predecessor arbitration and class action waiver policy, including that in effect as part of the DST Systems, Inc. Associate Handbook or any addendum or amendment thereto, or (iii) any successor arbitration and class action waiver policy (collectively, the "Arbitration Policy") to the extent applicable to Company Employees, the teams of which are incorporated herein by reference. Questions about the Arbitration Policy or requests for copies of any Arbitration Policy document can be directed to the Human Resources Department. Additionally, a copy of the DST Arbitration Program Agreement is available on the intranet site maintained for associate information.

### DST Enforces the Arbitration Agreement and Class Action Waiver

18. On January 13, 2017, Mr. James DuCharme, a participant in the Plan, filed a putative class action in the Western District of Missouri, seeking to recover damages on behalf of the Plan for DST's alleged wrongdoing. On February 22, 2017, DST filed a motion to compel arbitration and to dismiss Mr. DuCharme's lawsuit.

19. In *DuCharme*, DST moved the Court "to compel Mr. Ducharme to arbitrate his ERISA claims with DST on an individual basis in accordance with the terms of the Arbitration Program and Agreement." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 27 (DST's Motion to Compel Arbitration and to Dismiss), p. 1. DST argued that individual arbitration was required "because (1) Mr. Ducharme entered into a valid agreement to arbitrate with DST and (2) his breach of fiduciary duty claims under ERISA fall within the scope of that agreement." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 28 (Suggestions in Support of DST's Motion to Compel Arbitration and to Dismiss), p. 6. DST insisted that the Profit Sharing Plan "incorporates the terms of DST's Arbitration Agreement into the Plan, and thereby explicitly binds the Plan to the terms of that

5

Agreement." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 47 (DST's Response to Plaintiff's Sur-Reply in Support of Motion to Compel Arbitration and to Dismiss), p. 2; see also *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 39 (DST's Reply Suggestions in Support of Motion to Compel and to Dismiss), p. 3 (arguing that "[t]he Plan ... expressly provides for arbitration" and that "the Plan makes clear that the scope of the Arbitration Agreement covers claims arising out of or related to the Plan—such as the claims Mr. DuCharme seeks to assert"); *id*. p. 6 (arguing that claims for breach of fiduciary duty "are explicitly covered by the language of the Plan" and "subject to mandatory arbitration and class action waiver as provided under DST's Arbitration Policy" (quotation marks omitted)). Indeed, DST insisted that "neither the Arbitration Agreement nor the Amendment prohibits Mr. Ducharme or any other party to the Arbitration Agreement from arbitrating a breach of fiduciary duty claim in connection with purported losses to their individual accounts." *DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 47 (DST's Response to Plaintiff's Sur-Reply in Support of Motion to Compel Arbitration and to Dismiss), p. 3.

20. As for the arbitrability of ERISA claims, DST asserted:

> The Supreme Court and numerous federal courts, including the Eighth Circuit, have upheld compulsory arbitration of federal statutory claims, including ERISA claims, where such arbitration prohibits plaintiffs from proceeding as a class. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32 (1991) (compelling arbitration of Age Discrimination in Employment Act (ADEA) suit and holding that "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred" (internal quotation marks omitted)); Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2308-10 (2013) (enforcing individual arbitration in antitrust suit even where the costs of individual arbitration would exceed the maximum individual recovery); Owen v. Bristol Care, Inc., 702 F.3d 1050, 1052 (8th Cir. 2013) (compelling arbitration on an individual basis in Fair Labor Standards Act (FLSA) suit and finding "nothing in either the text or legislative history of the FLSA that indicates a congressional intent to bar employees from agreeing to arbitrate FLSA claims individually"); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir. 2005) (compelling

arbitration of ADEA, FLSA, Title VII and ERISA claims on an individual basis and holding that "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition").

*DuCharme*, No. 17-0022 (W.D.Mo.), Doc. 28 (Suggestions in Support of DST's Motion to Compel Arbitration and to Dismiss), p. 7 fn. 3.

21. According to DST:

It is well settled in the Eighth Circuit that claims alleging ERISA breach of fiduciary duties are properly arbitrable by agreement. See Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc., 847 F.2d 475 (8th Cir. 1988). In that case, the Eighth Circuit held that there was no "compelling basis to treat agreements to arbitrate ERISA claims differently from those cases in which the Supreme Court has enforced agreements made between private parties to arbitrate antitrust, Exchange Act, and RICO claims. Like other essentially fact-based claims for fiduciary mismanagement, we believe arbitrators are readily capable of handling the factual and legal complexities of ERISA claims and that those claims are not by their nature beyond the ken of arbitrators." Id. at 479 (internal citations and quotations omitted).

*Id.* at 9-10 at fn. 4.

22. DST also asserted:

"The Eighth Circuit has held that '[g]enerally, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001) (emphasis added) (internal quotation marks omitted). Therefore, even if one ignored that Mr. Ducharme's claims fall squarely within the coverage clause of the Arbitration Program and Agreement, it is clear that at the very least, one could not say with 'positive assurance' that the Agreement cannot be interpreted as covering Mr. Ducharme's claims."

*Id.* at 10 fn. 5.

23. On June 23, 2017, the Honorable Brian C. Wimes granted DST's motion to dismiss the *DuCharme* litigation, finding that the Arbitration Agreement was "valid" and that "Ducharme's claims for breach of fiduciary duty f[e]ll within the Arbitration Agreement'' scope." *Ducharme v. DST Sys., Inc.*, No. 17-CV-0022-BCW, 2017 WL 7795123, at *1 (W.D. Mo. June 23, 2017).

7

**DST Notifies All Plan Participants of the Right to File Individual Arbitration**

24. On June 18, 2018, DST sent a notice to all Plan participants who did not opt out of the Arbitration Agreement explaining that a former employee had initiated an arbitration relating to the Plan and advising each participant that he or she "may initiate an individual arbitration proceeding under the Arbitration Program by submitting a written request" to DST. Attached hereto as **Exhibit D** is a true and correct copy of the DST Notice Regarding Right to Assert Claim dated June 18, 2018.

25. Hundreds of Plan participants initiated arbitration proceedings through the American Arbitration Association ("AAA"). As of October 4, 2021, 554 participants or beneficiaries have initiated arbitration proceedings. During the past three years, the arbitrations have progressed—including through discovery, depositions, motion practice, merits hearings, or simply settlements. *Hursh v. DST Sys., Inc.*, 2021 WL 4526849, at *1.

26. The Western District of Missouri has already confirmed at least seventy-six (76) of the arbitration awards.[1]

---

[1] *See Michael Murphy v. DST Systems, Inc.*, No. 4:21-mc-174; *Nick Rutkowski v. DST Systems, Inc.*, No. 4:21-cv-705; *Brenda Keeton v. DST Systems, Inc.*, No. 4:21-mc-9006; *Brent Mayberry v. DST Systems, Inc.*, No. 4:21-mc-9007; *Michelle O'Brien v. DST Systems, Inc.*, No. 4:21-mc-9008; *Deborah Quast v. DST Systems, Inc.*, No. 4:21-mc-9009; *Rob Parrot v. DST Systems, Inc.*, No. 4:21-mc-9012; *Theresa Hursh v. DST Systems, Inc.*, No. 4:21-cv-9017; *Maria Alvarado v. DST Systems, Inc.*, No. 4:21-cv-9018; *Jason Hamilton v. DST Systems, Inc.*, No. 4:21-cv-9019; *John Oswald v. DST Systems, Inc.*, No. 4:21-cv-9020; *Stephanie McMillin v. DST Systems, Inc.*, No. 4:21-cv-9021; *David Eisnberger v. DST Systems, Inc.*, No. 4:21-cv-9022; *Melody Miser v. DST Systems, Inc.*, No. 4:21-cv-9023; *Travis Schulte v. DST Systems, Inc.*, No. 4:21-cv-9024; *Angie Manske v. DST Systems, Inc.*, No. 4:21-cv-9025; *Katherine Gillespie v. DST Systems, Inc.*, No. 4:21-cv-9026; *Fred Quatrocky v. DST Systems, Inc.*, No. 4:21-cv-9027; *Kent Clower v. DST Systems, Inc.*, No. 4:21-cv-9028; *Matthew Axton v. DST Systems, Inc.*, No. 4:21-cv-9029; *Gary Blanck v. DST Systems, Inc.*, No. 4:21-cv-9030; *Kiva Miller v. DST Systems, Inc.*, No. 4:21-cv-9031; *Bernard Billesbach v. DST Systems, Inc.*, No. 4:21-cv-9032; *Lisa Kudrick v. DST Systems, Inc.*, No. 4:21-cv-9033; *Percy Payne v. DST Systems, Inc.*, No. 4:21-cv-9034; *Janet Kannard v. DST Systems, Inc.*, No. 4:21-cv-9035; *Vanessa Bross v. DST Systems, Inc.*, No. 4:21-cv-9036; *Patrick Williams v. DST Systems, Inc.*, No. 4:21-cv-9037; *Scott Yungeberg v. DST Systems, Inc.*, No. 4:21-cv-9038; *Anne Arnold v. DST Systems, Inc.*, No. 4:21-cv-9042; *Caryl Summers v. DST Systems, Inc.*, No. 4:21-cv-9043; *Cindy Gordanier v. DST Systems, Inc.*, No. 4:21-cv-9044; *Jason Green v. DST Systems, Inc.*, No. 4:21-cv-9045; *Kelly Highfill v. DST Systems, Inc.*, No. 4:21-cv-9046; *Kole Scarbrough v. DST Systems, Inc.*, No. 4:21-cv-9047; *Matt Kolakowski v. DST Systems, Inc.*, No. 4:21-cv-9048; *Michael Brandt v. DST Systems, Inc.*, No. 4:21-cv-9049; *Mitchell Schwartz v. DST Systems, Inc.*, No. 4:21-cv-9050; *Molly Eaton v. DST Systems, Inc.*, No. 4:21-cv-9051; *Jason Sutton v. DST Systems, Inc.*, No. 4:21-cv-9052; *Janet Howell v. DST Systems, Inc.*, No. 4:21-cv-9053; *Barney Frazier v. DST Systems, Inc.*, No. 4:21-cv-9054; *Loren Province v. DST Systems, Inc.*, No. 4:21-cv-9055; *Lisa

**Unhappy with the Results of Arbitration, DST is Now Refusing to Arbitrate
in Violation of this Court's Orders and the Parties' Arbitration Agreement**

27. In tactical move which is squarely in line with that which this Court has already described as a "crass manipulation of the legal process," and which is entirely reminiscent of the bate-and-switch attempted in *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020), DST is now refusing to proceed in arbitration in accordance with the terms of the Arbitration Agreement "because they did not turn out as DST hoped they would." *Hursh v. DST Sys., Inc.*, 2021 WL 4526849, at *9, 10.[2] Specifically, although the Arbitration Agreement requires that DST "pay the Arbitrator fees and the costs charged by AAA in any arbitration," DST is refusing to pay the fees and costs charged by the AAA in each of the arbitration actions filed by the above-listed Plaintiffs.

28. As a result, the AAA has "administratively closed" the Plaintiffs' arbitration actions. In other words, the Plaintiffs' arbitrations have each been halted and prevented from going forward despite this Court's orders in *DuCharme* and *Hursh*. DST's breach of the Arbitration

---

*Cracraft v. DST Systems, Inc.*, No. 4:21-cv-9056; *Larry Squires v. DST Systems, Inc.*, No. 4:21-cv-9057; *Stacey Goins v. DST Systems, Inc.*, No. 4:21-cv-9058; *Benjamin Redwing v. DST Systems, Inc.*, No. 4:21-cv-9060; *Terry Teghtmeyer v. DST Systems, Inc.*, No. 4:21-cv-9061; *Bruce Zollars v. DST Systems, Inc.*, No. 4:21-cv-9062; *Linda Denny-Glynn v. DST Systems, Inc.*, No. 4:21-cv-9063; *Kim Gale v. DST Systems, Inc.*, No. 4:21-cv-9064; *Mark Cunningham v. DST Systems, Inc.*, No. 4:21-cv-9065; *Linda Calder v. DST Systems, Inc.*, No. 4:21-cv-9066; *Kim Bolch v. DST Systems, Inc.*, No. 4:21-cv-9067; *Joshua Cook v. DST Systems, Inc.*, No. 4:21-cv-9068; *Josh P. Harper v. DST Systems, Inc.*, No. 4:21-cv-9069; *Diana Conelly Justus v. DST Systems, Inc.*, No. 4:21-cv-9070; *Keely Inman v. DST Systems, Inc.*, No. 4:21-cv-9071; *Johnathan Breckenridge-Mitchell v. DST Systems, Inc.*, No. 4:21-cv-9065; *Barbara O'Mara v. DST Systems, Inc.*, No. 4:21-cv-9073; *Dana Griem v. DST Systems, Inc.*, No. 4:21-cv-9074; *Karen Owens v. DST Systems, Inc.*, No. 4:21-cv-9075; *Waiyee Juley Tsang v. DST Systems, Inc.*, No. 4:21-cv-9076; *Jackie Older-Hefner v. DST Systems, Inc.*, No. 4:21-cv-9077; *Amy Keller v. DST Systems, Inc.*, No. 4:21-cv-9078; *Dennis Dunbar v. DST Systems, Inc.*, No. 4:21-cv-9079; *Bruce Allen v. DST Systems, Inc.*, No. 4:21-cv-9080; *Russ Brooks v. DST Systems, Inc.*, No. 4:21-cv-9081; *Kristy Hill Revis v. DST Systems, Inc.*, No. 4:21-cv-9082; *Tina Carey v. DST Systems, Inc.*, No. 4:21-cv-9083; *Phillip Biggs v. DST Systems, Inc.*, No. 4:21-cv-9084; *Matt Dunn v. DST Systems, Inc.*, No. 4:21-cv-9085; *Rob Berkstresser v. DST Systems, Inc.*, No. 4:21-cv-9086; *Camille Jackson v. DST Systems, Inc.*, No. 4:21-cv-9087; *Meri Ann Mason v. DST Systems, Inc.*, No. 4:21-cv-9088; *Stephanie Brown v. DST Systems, Inc.*, No. 4:21-cv-9089.

[2] To date, the Arbitration Claimants have won 262 arbitrations whereas DST has won only 62 (and thus far, the Arbitration Claimants who lost in arbitration have, without exception, successfully won reversals on appeal).

Agreement is a direct affront to this Court's jurisdiction and authority. DST's continued defiance of this Court's orders must not be blessed, as least by this order.

### The FAA Requires that the Court Make an Order Directing DST to Proceed in Arbitration in Accordance with the Terms of the Arbitration Agreement

29. This Court has *already held* that the Arbitration Agreement was "valid" and that "Ducharme's claims for breach of fiduciary duty f[e]ll within the Arbitration Agreement'' scope." *Ducharme v. DST Sys., Inc.*, 2017 WL 7795123, at *1. Moreover, in response to DST attempts to walk back its earlier position regarding arbitration, this Court held, *inter alia*,

   (1) that because the Arbitration Claimants were "employed by DST in Kansas City, Missouri," and because "DST's principal place of business is in Kansas City, Missouri," and because the "arbitration hearing was conducted in Jackson County, Missouri," the Western District "clearly has jurisdiction" over the arbitrations pending in Missouri (*Hursh v. DST Sys., Inc.*, 2021 WL 4526849);

   (2) that in accordance with *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), claims under ERISA § 502(a) may be brought on an *individual* basis (*id.* at 12);

   (3) that in accordance with *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018), and *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc*., 847 F.2d 475 (8th Cir. 1988), and "every [other] circuit to consider the question," claims under ERISA § 502(a) are *arbitrable* on an individual basis (*id.* at 12-13); and

   (4) that *even if* an ERISA claim must otherwise be brought in a collective action, "DST *is estopped* from benefitting from that rule because it previously represented to the courts, arbitrators and the Arbitration Claimants that the ERISA claims at issue cannot be brought in a collective action" (*id.* at 13, emphasis added).

30. Moreover, this Court labelled DST's assertion that newfound opposition to arbitration an "anathema," and stated that "*[s]uch crass manipulation of the legal process constitutes an insult to the integrity of the judicial system and **fully warrants invocation of the***

***doctrine of judicial estoppel.*** *Id.* at 22, quoting *Data Mountain Sols., Inc. v. Giordano*, 680 F. Supp. 2d 110, 128 (D.D.C. 2010) (emphasis added).[3]

31. Finally, each arbitration is initiated by the filing of a written "Joint Submission for Arbitration," signed on behalf of both the claimant and DST. *See e.g.*, Joint Submission, attached here as **Exhibit E**. By jointly submitting their disputes to arbitration, the parties here have created an independent, post-dispute arbitration agreement, enforceable under the FAA. *See Hursh v. DST Sys., Inc.*, 2021 WL 4526849, at *6 ("This document itself constituted an agreement to arbitrate.").

---

[3] DST now asserts, contrary to its earlier position, that ERISA requires that ERISA breach of fiduciary duty claims be brought in a representative capacity on behalf of the "entire plan." DST is wrong. As the Seventh Circuit recently explained, in *Massachusetts Mutual Life Insurance Co. v. Russell*, the Supreme Court held that § 1132(a) precluded individualized relief in a defined contribution plan. *Smith v. Bd. of Directors of Triad Mfg., Inc.*, ___ F.4th ___, 2021 WL 4129456, at *4 (7th Cir. Sept. 10, 2021). However, in *LaRue*, "[t]he Court held that § 1132(a) *permitted* such individualized relief [in a defined *contribution* plan], distinguishing *Russell* in the process." *Id.* (Emphasis supplied by the Court.)

> "Unlike the defined contribution plan" in *LaRue*, "the disability plan at issue in *Russell* did not have individual accounts; it paid a fixed benefit based on a percentage of the employee's salary." *Id.* at 255. And so "[t]he 'entire plan' language in *Russell*," the Court noted, "speaks to the impact of § 409 on plans that pay defined benefits." *Id.* at 255. Put another way, "*Russell*'s emphasis on protecting the 'entire plan' from fiduciary misconduct reflects the former landscape of employee benefit plans. That landscape has changed." *Id.* at 254.
>
> The difference between a defined benefit plan and a defined contribution plan was dispositive in *LaRue*. *Id.* at 254-55. As the Court explained, "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *Id.* at 255. But "[f]or defined contribution plans," misconduct by a fiduciary "need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id.* at 255–56. The defined contribution plan participant in *LaRue*—unlike the defined benefit plan participant *Russell*—alleged fiduciary misconduct that fell "squarely within" § 1109, so the Court permitted his claim under § 1132(a). *Id.* at 253, 256. With *Russell* cabined to defined benefit plans, *LaRue* concluded "that although § [1132(a)] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.* at 256.

*Smith*, 2021 WL 4129456, at *4. *See also Dorman*, 780 F. App'x at 513–14 (holding that claims for relief under § 502(a)(2) "are inherently individualized when brought in the context of a defined contribution plan," and that individual arbitration "is consistent with *LaRue*.").

In any event, this Court has *already ruled* that ERISA "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Hursh v. DST Sys., Inc.*, 2021 WL 4526849, at *4 (quoting *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008)). And the Arbitration Agreement explicitly states that "the substantive law applied to claims shall be the state or federal substantive law that would be applied by a federal district court judge sitting in the county of the place of the Associate's employment or prospective employment." (Ex. A at A-2.)

*See also Ganguly v. Charles Schwab & Co.*, 2004 WL 213016, at *2 (S.D.N.Y. Feb. 4, 2004), *aff'd*, 142 F. App'x 498 (2d Cir. 2005) ("even if plaintiff could overcome the hurdle of the pre-dispute Schwab Account Application, there is no genuine dispute that he freely and willingly executed the post-dispute NASD Uniform Submission Agreement."); *Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) ("the Submission Agreement, being an 'agreement in writing to submit to arbitration an existing controversy,' is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting 9 U.S.C. § 2); *Fisher v. Wheat First Sec., Inc.*, 62 F. App'x 472, 475 (4th Cir. 2003) ("The Uniform Submission Agreement completed and signed by Fisher is a valid and binding contract that has the force of modifying earlier agreements.").

32. Thus, even if DST were not otherwise *required* to arbitrate in the first place, freely and willingly *agreed* to resolve its dispute with the Plaintiffs in arbitration.

33. DST's failure and willful refusal to abide by the rules in the pending arbitrations is a practical and willful refusal to arbitrate.

34. Therefore, in accordance with Section 4 of the FAA, the Court should enter an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.[4]

35. Moreover, in order that DST not be allowed to interfere with the anticipated settlements from proceeding with Ruane, Cunniff & Goldfarb, Inc., the Court should Order that DST produce true and accurate copies of the Allocation Reports for each of the Plan Participants who has filed and/or who hereinafter files an arbitration proceeding, and that DST hereinafter refrain from withholding such Reports.

---

[4] To the extent that DST argues that a class certification order prevents the entry of an order directing the parties to proceed to arbitration in accordance with the terms of the agreement, this Court has *already held* that any such order would be "improper" as "interfere[ing] with pending proceedings" *Hursh v. DST Sys., Inc.*, 2021 WL 4526849, at *10. In any event, there is presently *no order* enjoining or staying the arbitration proceedings.

## CONCLUSION

36. Each Plaintiff and DST entered into an agreement requiring them to arbitrate.

37. DST breached that agreement by failing to pay the necessary fees and expenses.

38. Until DST complies with the AAA fee and expenses determinations, the Plaintiffs' arbitrations cannot proceed.

39. Accordingly, this Court should compel DST to arbitration under 9 U.S.C. § 4.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

40. Enter an Order requiring DST to arbitrate each Plaintiff's claims under the Arbitration Agreement, including by paying the necessary arbitration fees and costs.

41. Enter an Order requiring DST to produce true and accurate copies of the Allocation Reports for each of the Plan Participants who has filed and/or who hereinafter files an arbitration proceeding.

Respectfully submitted,

THE KLAMANN LAW FIRM

BY: /s/ _Andrew Schermerhorn_
John M. Klamann  MO 29335
Andrew Schermerhorn  MO 62101
4435 Main Street, Suite 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com

KAPKE & WILLERTH
Ted Kapke MO 52114
Mike Fleming MO 53970
3304 N.E. Ralph Powell Road
Lee's Summit, MO 64064
Telephone: (816) 461-3800
Facsimile:  (816) 254-8014
ted@kapkewillerth.com

mike@kapkewillerth.com

WHITE, GRAHAM, BUCKLEY & CARR
William Carr   MO 40091
Bryan T. White MO 58805
19049 East Valley View Parkway
Independence, Missouri 64055
(816) 373-9080 Fax: (816) 373-9319
bwhite@wagblaw.com

HUMPHREY, FARRINGTON & McCLAIN
Kenneth B. McClain   MO 32430
221 West Lexington, Suite 400,
P.O. Box 900
Independence, Missouri 64051
Telephone: (816) 836-5050
Facsimile:  (816) 836-8966
kbm@hfmlegal.com